Mutual Life Insurance Co. *v.* Walling.

## MUTUAL LIFE INSURANCE COMPANY

*v.*

### THOMAS WALLING et al.

An owner of land entered into a contract to sell it at a certain price named, and the purchaser agreed to proceed to erect a building upon it of a certain specified character, and it was agreed that when the building had progressed to a certain stage the vendor should make a deed of conveyance to the purchaser and accept from him a mortgage for a sum considerably more than the price of the land conveyed, and advance to the purchaser at the same time a part of the excess over the price secured by the mortgage and the balance when the building was finished. The contract was carried out and the deed delivered and the mortgage made and the first payment of the advance upon the mortgage. In a contest between the mortgagee and the lien-holders—*Held*, that the lien-holders were secured to the amount of the purchase price and had priority over the amount advanced in cash upon the mortgage.

Bill to foreclose.

*Mr. Frederick G. Burnham* and *Mr. Henry V. Condict*, for the complainant.

*Mr. Louis H. Schenck* and *Mr. James L. Griggs*, for the defendants.

PITNEY, V. C.

This is a bill to foreclose founded upon a mortgage dated the 3d of December, 1891, given to secure a bond conditioned to pay $1,500, with interest, in one year. Seven hundred and fifty dollars only is claimed to be due upon it. Two hundred and fifty dollars of this sum was consideration money for the premises conveyed on the same day by complainant to the mortgagor; the $500 additional was money loaned on that day, making in all $750. So far there is no dispute. The litigated questions arise out of certain lien claims filed against the property, which claim to have priority over $500 of the amount due upon the mortgage by virtue of the act of March 4th, 1879 (*P. L. p. 77; Rev. Sup. p. 456*), which provides that mechanics' liens shall have priority over what are called advance-money mortgages.

The facts are that the particular premises covered by this mortgage, being a lot fifty by two hundred feet, and part of a larger tract, were owned by the complainant, and on the 24th of September, 1891, a little over two months before the date of the mortgage and the conveyance, it entered into a written agreement with Walling, the defendant, in which it agreed, in consideration of $3,000, to sell and convey to him the whole tract. Three hundred dollars of purchase-money was paid down and the balance was to be paid at the time of the delivery of deeds, at the rate of $250 for each of nine lots of fifty by two hundred feet, and $200 for another of the lots. It was provided that Walling should, in the meantime, enter into possession and at once commence the erection of at least three houses, according to certain specified plans and sketches, which should cost $2,400 each, and when either of the houses should have arrived at a

certain stage of its construction, then the complainant was to deliver a deed of the lot on which it stood and accept in return a mortgage for $1,500; that the sum of $500 should be, at the delivery, advanced by the party of the first part, and the balance of $750 when the building should be fully completed. Under that agreement several houses were commenced by Walling, and the one on the lot covered by the mortgage here in question was so far advanced that on the 3d of December a deed of conveyance was made and the mortgage in question received back and $500 in cash advanced upon it. Subsequently a lien claim was filed by one Craig, one of the defendants herein, and an action brought upon it against Walling as owner and the complainant as mortgagee, a plea filed thereto and afterward a consent by the attorney of the complainant was filed to the effect that judgment might be entered that the mechanics' lien was subsequent to $250 of complainant's mortgage and prior to the balance of $500, such a judgment as should have been entered if the complainant's mortgage were strictly an advance-money mortgage within the meaning of the act above mentioned.

The complainant's bill asks that the complainant may be relieved from that admission, and the effect of it in the judgment, on the ground that it was made under a misapprehension of the facts of the case; that at the time of making it the attorney had been informed and was under the impression that no money had been paid to Walling at the time the deed was delivered and the mortgage taken back, and that the $500 which actually was paid was so paid at a later day.

With regard to this part of the relief I am of the opinion that the complainant's remedy is by application to the court in which the judgment was rendered, and if relievable at all against the consent, which is in the nature of a *relicta*, it may be relieved there. But it cannot be relieved anywhere if, in point of fact, the mortgage is an advance-money mortgage within the meaning of the act before mentioned.

The question whether this mortgage was, in point of fact, an advance-money mortgage and within the act, was elaborately discussed, and I am of the opinion that it was such a mortgage.

That act in substance is as follows.    It commences with a preamble:

"WHEREAS, It is the practice of owners of lots or tracts of land to dispose of the same to a builder or builders, taking therefor a mortgage or mortgages in excess of the purchase-money price of said lot or tract of land, the mortgagee agreeing to pay such excess to the aforesaid builders from time to time as the building or buildings progress, such mortgages being known as advance-money mortgages; therefore,"

Now, I stop here to notice an argument on the part of the complainant that the mortgage here in question does not comply entirely with the definition, in that here a part of the money was paid at the time and only a part agreed to be paid in the future. But, in equity, it would seem that the distinction must vanish, because here the mortgage was given in pursuance of an agreement previously made, and must be considered in this court according to the substance of the thing, and not according to the mere legal status of the title.

However that may be, the enacting part of the statute seems to set it all at rest, for it proceeds to declare—

"That in all such transactions the building or buildings so erected shall be liable for the payment of any debt contracted and owing to any person or persons for labor performed or materials furnished for the erection and construction thereof, which debt shall be a lien on such building or buildings and on the land whereon they stand, including the lot or curtilage whereon the same are erected, and."

Now, these words, commencing with "the building" and ending with "and" may be considered as expletive and omitted. Then follows the gist of the act, viz.:

"That the lien for labor performed or materials furnished for the erection and construction of any such building or buildings shall be a prior lien to the lien of any mortgage created on such building or buildings and lot or tract of ground to secure *either in whole or in part* any advances in money to be used in and about the construction of such building or buildings (except only so much of the amount of said mortgage as shall be for the purchase-money of the lot or tract of land whereon the said building or buildings shall be erected)."

Here it is plain that the act declares that the mortgage shall be within the provisions of the act, and the money secured by it,

except the purchase-money, deferred to the mechanics' lien, whether it is made to secure *either in whole or in part* advances. Clearly this mortgage was made to secure, in part at least, advances, and is therefore directly within the act.

The complainant relied, however, upon the proviso, which is:

"That nothing in this act shall interfere with a mortgage or mortgages to secure *bona fide* loans of money not advances as aforesaid, such *bona fide* loans to be paid in full, anything in this act to the contrary notwithstanding."

Now, if this mortgage had been made to secure merely the purchase price—$250 and $500 paid at the time it was given— it may be that it would not be properly classed as an advance-money mortgage, but as a mortgage to secure a *bona fide* loan of money. But I do not understand that the proviso, admitting it to apply to so much of this mortgage as was money advanced at the date of the conveyance, has the force and effect of neutralizing that part of the act which declares that the mechanics' lien shall be superior to the mortgage given to secure " either in whole or in part any advances in money " &c.

But the complainant makes a further answer to the defendant's contention, and alleges and proves that the $500 in cash paid in this instance to Mr. Walling was by him in turn immediately paid over and distributed among the very persons here and now claiming liens, so that they had the benefit of it; and upon these facts it claims that it would be inequitable and unjust, in the view of a chancellor, to permit these lien-holders, after having received this money in part payment of the amounts due them, to now claim priority over it.

At first I thought this contention had solidity, but upon reflection I have come to the conclusion that it has none. The Mechanics' Lien law gives the lien; the act in question regulates the priority of these liens, and it does this arbitrarily. There can be no doubt about the power of the legislature to do so. The act describes these mortgages as mortgages given to secure money advanced for the very purpose of paying these mechanics' liens, and it makes no exception in favor of moneys advanced not only for the *purpose* of being used in and about

the construction of the buildings, but *actually* so used. It does not seem to be aimed at mortgages which, though actually intended for the purpose of raising money to pay the contractors, have not been devoted to that use, and the moneys advanced on them applied to other uses, but it is aimed at and includes all mortgages of that description, whether the money so advanced be or be not used in paying for the construction of the building.

The theory of the act is, that as between the moneyed man advancing his money and the man advancing labor and materials, the labor and materials have the superior right; so that, if the property, in the end, is not worth enough to pay all, the man who puts in his hard cash shall lose rather than the man who puts in materials and labor. It is not for this court to criticise the justice and the equity of such a statute, but it is its duty to enforce it. The inequity, if any exists, is in the statute and not in the man who takes advantage of it.